PAUL DAVID MAROTTA (State Bar No. 111812)
MEGAN JEANNE (State Bar No. 251294)
THE CORPORATE LAW GROUP
1342 ROLLINS ROAD
BURLINGAME, CA 94010
Telephone:    (650) 227-8000
Facsimile:    (650) 227-8001
paul@tclg.com
megan@tclg.com

Attorneys for Plaintiff
MENTOR CAPITAL, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENTOR CAPITAL, INC., <br><br> Plaintiff. <br><br> v. <br><br> BHANG CHOCOLATE COMPANY, INC., a Nevada corporation and BHANG CORPORATION, a Nevada corporation, <br><br> Defendants. | Civil Action No. 3:14-cv-03630-LB <br><br> **MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER FOR DEFENDANT BHANG CHOCOLATE COMPANY AND FOR PRELIMINARY INJUNCTION** <br><br> Date:        August 10, 2017 <br> Time:       9:30 a.m. <br> Courtroom:  C |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 10, 2017 at 9:30 a.m. or as soon thereafter as counsel may be heard by the above entitled court, Courtroom C, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Mentor Capital, Inc. ("Mentor") will and hereby does move the court, pursuant to California Civil Procedure Code Sections 564(b) and 708.610, to appoint a receiver to manage Judgment Debtors' businesses, including collecting payments owed by licensees, enforcing trademark rights, enforcing license agreements and other contracts, pursuing improper and fraudulent transfers of debtor property, and engaging in commercial transactions, and ensure that the assets of Judgment Debtors' business are not being improperly removed from the business, and for an injunction prohibiting interference therewith.

This motion is based upon this Notice of Motion and Motion; the accompanying memorandum of points and authorities in support of this motion; the judgment entered in this matter on December 29, 2016, the supporting declarations of Chet Billingsley, Paul Marotta, and Kevin Singer filed herewith; all pleadings and papers on file in this action, and upon such other matters as may be presented to the court at the time of the hearing.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

A money judgment was entered in Mentor's favor against Bhang Corporation, aka Bhang Chocolate Company, Inc. (together "Bhang"), on December 29, 2016, in the amount of $1,921,534.62 ("Judgment"). Interest accrues on the Judgment at the rate of $526.45 per day or, approximately, $15,000 per month.

Bhang has made no attempts to pay any portion of the Judgment and has ignored all efforts by Mentor to discuss payment of the Judgment.[1] What is worse is that Bhang and its owners are apparently using artifices to avoid Mentor's judgment collection efforts.

While Bhang tries to avoid paying the judgment, its licensees are refusing to pay anyone, its trademarks are still being used, it claims no money is coming in, and its business is withering. Additionally there are assets here that Bhang will never pursue because they involve recovering money fraudulently paid out to the Bhang owners. For all these reasons a receiver is needed to marshal Bhang's assets, protect Bhang's business, enforce Bhang's intellectual property, and ensure Mentor's judgment is paid.

### II.   STATEMENT OF FACTS

Bhang and its owners are engaging in concerted efforts to hide or transfer Bhang assets to other entities in which the owners have interests in an attempt to avoid Mentor's Judgment. Mentor has served, through the Northern California US Marshal, over a dozen levies on banks where Bhang has maintained accounts, licensees of Bhang's intellectual property, vendors, service providers, and the like. Bhang has closed all bank accounts in its name and is using bank accounts in the names of other people or entities, including Scott Van Rixel ("Van Rixel") Bhang CEO's

---

[1] Bhang did ask that the judgment be "lifted" so Bhang does not go out of business.

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

brother Tim Van Rixel, and a bank account in the name of Van Rixel.

And Bhang's business and assets are withering. Bhang's business model is to license its intellectual property to licensees in exchange for license and royalty payments. Bhang neither manufactures, produces, nor sells its branded products to end-users or individual store-fronts and relies upon licensees to produce and distribute its branded products. A license agreement between Bhang and a former licensee shows that the *minimum* royalty fee due to Bhang is $30,000 per month.

But these licensees have responded to Mentor's levies claiming that the levy itself is a breach by Bhang of the license agreement and, therefore, no payments are due to Bhang. The licensees are therefore possibly in breach of the license agreement, or are infringing Bhang's trademarks, or both. To Mentor's knowledge Bhang is doing nothing to enforce its license agreements or protect its marks.

Despite Mentor levying Alta Supply, Inc., a California entity owned and run by Richard Sellers, a Bhang principal, director, and 30% owner, Alta Supply paid nothing over in response to the levy. And this, despite California being Bhang's largest market, and with what Mentor estimates are $8 million in retail sales by Alta Supply since the Judgment was entered.

To make matters worse, Todd Winter, a lawyer representing Bhang and Richard Sellers' entities, has also been contacting licensees, claiming that the levies were not properly served, and instructing the licensees not to turn over any funds to the US Marshal as instructed by the levies. Bhang's lawyer is further telling licensees that Mentor will soon be out of business due to an action filed in Utah by family members of another of Bhang's counsel so such payments to Mentor are unnecessary.

Moreover, based on the past behavior of Bhang and its owners as well as intimate knowledge of Bhang's business practices, Mentor believes that Bhang is attempting to leave Bhang as an empty, judgment proof shell by (i) fraudulently conveying assets from the business to its owners or third parties, (ii) trying to skirt Mentor levies by asking that its licensees direct all payments to a middleman, (iii) setting up company bank accounts in names other than Bhang, and (iv) transferring Bhang assets and intellectual property to new entities owned by Bhang's owners.

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

Bhang has also entered into a joint venture with the Cypress Hill musical group and has, or is in the process of, transferring significant assets into this joint venture as a further attempt to avoid paying the Judgment entered against it. A trademark filing was made for CHB [Cypress Hill Bhang] in a stylized design by Bhang lawyer, Todd Winter, in United States Patent and Trademark Office Trademark Application Serial Number 8725572[2], filed October 25, 2016.

Mentor is well aware that Bhang's owners have raided the company's bank accounts for their own personal gain in the past and is afraid that they are taking the same actions now. The entirety of Mentor's original $1,500,000, which formed the principal for the Judgment, was transferred out of Bhang's bank account within days of deposit and into those accounts of its owners, Van Rixel, Sellers, and William Waggoner[3]. Mentor believes that some of these funds were used to purchase real property in Florida that has since been transferred to separate entities such as Empajo Invest, LLC and 330 E. San Marino Drive, LLC, both of which are managed by Van Rixel.

Mentor's experience with Bhang's financial statements is that they are inaccurate and certainly don't represent GAAP. For example, financial statements given to Mentor during the short period of time that the parties worked together in 2014 reference cash assets in an account labeled as "Far and Away". Van Rixel told Mentor's Chief Executive Officer, Chet Billingsley, that some of the cash earned by Bhang is kept off the books in either cash or precious metals.

Bhang has even undertaken actions that dilute the Bhang brand and the value of its intellectual property. Van Rixel has formed several other entities which have registered trade and service marks identical to those registered by Bhang, including stylized designs mirroring the Bhang name and "B" logo. As Bhang does not manufacture or sell products directly, these trade and service marks make up a substantial portion of the value of Bhang.

Some marks have been registered in the name of Founding Fathers Hemp Co. ("Founding

---

[2] The Applicant is CB Brands, LLC, which was formed in Nevada in August, 2016, right after Mentor prevailed in the underlying arbitration. Its manager is Scott Van Rixel and its "address" is the same UPS Store where Bhang has its principal address.

[3] Bhang stipulated to such fact during the arbitration which led to the Judgment. The distributions were in the exact percentage of the ownership interest of the three principals.

- 4 -

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

Fathers"), an entity owned by Van Rixel which has the same address as Bhang. As Founding Fathers is owned by Van Rixel and operates within the same cannabis sphere as Bhang it is unlikely that Bhang has received fair market value for the use of similar trademarks. Bhang has certainly not made any effort to oppose the registration of these similar marks and is not acting in the best interests of Bhang stakeholders including Mentor.

Since entry of the Judgment against Bhang several licensees have invoked a termination provision of their license agreements which allow termination for cause "if a substantial portion of such Party's business is subject to attachment or similar process". To Mentor's knowledge Bhang and Van Rixel have done nothing in response to these claims of breach, further hurting Bhang's business and prospects for paying Mentor what is owed.

Other entities, CB Brands, LLC (a Nevada entity managed by Van Rixel) ("CB Brands") and The Chocolate Cartel, Co., a New Mexico entity affiliated with Van Rixel and his brother Tim Van Rixel, also seem to be used by Bhang to avoid Mentor's levies. As Van Rixel owns, manages, or has a substantial stake in these new entities, it is doubtful that Bhang will receive fair compensation from them giving Bhang the funds needed to pay Mentor's judgment.

### III.   ARGUMENT

Federal Rule of Civil Procedure 69(a) governs enforcement of a money judgment and directs the district court to look to state rules in applying such enforcement procedures. FRCP Rule 69(a); *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010). By virtue of the prior proceeding in which the parties agreed to *in personam* jurisdiction of this Court, this Court is the proper venue to bring a motion for purposes of enforcing the ensuing Judgment, including appointment of a receiver.

A.   <u>A Receiver is Necessary to Marshal and Preserve the Assets of Bhang.</u>

California Civil Procedure Code §564(b) provides that, "a receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases: (3) After judgment, to carry the judgment into effect," and "(9) In all other cases where necessary to preserve the property or rights of any party."

Here a receiver is necessary to carry Mentor's judgment into effect, and to preserve Bhang's

- 5 -

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

property and assets so that it can pay Mentor what it owes; thereby protecting Mentor's interests and rights.

California Civil Procedure Code Section 708.620 further provides that, "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment."

### 1. A Receiver is Necessary for Mentor to Collect the Judgment.

Bhang had the option of working with Mentor to pay the judgment. Of proposing a reasonable payment plan. Of offering something. It chose not to. When asked if it intended to pay the judgment it did not respond. When counsel asked counsel why Bhang did not make some offer of payment, none was forthcoming from Bhang or its owners.

The long and the short of it is that Mentor will not be paid; it will never collect the judgment, unless a receiver is appointed by this court. Mentor's $1,500,000 will be kept by Bhang and its principals with impunity. Mentor will never collect the principal, let alone the substantial interest that is due and has been ordered to be paid. Bhang is not just thumbing its nose at Mentor; it is thumbing its nose at the American Arbitration Association, the esteemed arbitrators who heard this matter, this court, and the federal judiciary.

Bhang has had every opportunity to do the right thing and it has chosen not to. For that reason, a receiver should be appointed. Considering the interests of Mentor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment.

### 2. A Receiver is Necessary to Keep Bhang in Business.

Bhang is wasting. It has claimed and admitted that no money is coming in. Its licensees have cried, "breach," and are refusing to pay anyone. Other entities seem to be infringing Bhang's trademarks. It has no bank accounts; at least no accounts actually in its own name. It is owed $1,500,000 fraudulently transferred to its principals and those principals will never bring an action to collect those amounts. And this wasting means that it will never pay Mentor what is due.

Bhang cannot openly do business with Mentor's judgment looming because of fear that Mentor will levy anyone and everyone, which it will. Meanwhile as Bhang attempts to drive

- 6 -

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

commerce through dummy bank accounts, hastily formed third parties, nominees, and a shell game of entities to avoid paying Mentor, Bhang's interests are ignored.

Based on Bhang's and its owners' actions here, including what appear to be transfers of intellectual property and assignment of funds and assets to separate entities, appointing a receiver over Bhang is not only in the best interests of carrying Mentor's Judgment into effect but is also necessary to prevent the fraudulent conveyance of and to preserve the assets of Bhang in the interests of its other stakeholders, including vendors and creditors.

In completing its tasks the receiver has the, "power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may authorize." Cal. Civ. Proc. Code §568.

A receiver is necessary to keep possession of the assets of Bhang and to ensure that funds are adequately and properly collected, managed, and disbursed. Van Rixel, Sellers, and Waggoner have proven that they have no interest in properly maintaining or preparing accurate financial records. Within days of receipt of Mentor's original $1,500,000, the entirety of the funds were transferred to Van Rixel, Sellers, and Waggoner without so much as a notation in the financial statements.

Mentor has no doubt that similar activities are currently happening as soon as any funds are received by Bhang. Someone needs to take Bhang's side against all comers, including its shareholders and its licensees. No one is doing that now.

Mentor has initiated several searches for assets in Bhang's name but Bhang does not have any bank accounts in its name at any institution in the nation. Bhang did have an account at Bank of America but that account has since been closed. Mentor has no authority to claw back improper or fraudulent conveyances on behalf of Bhang but a receiver does. A receiver is also obligated to ensure that the funds are properly accounted for in financial records.

A receiver will also help ensure that Bhang is receiving all of the license and royalty fees due under license agreements. Mentor has served almost two dozen levies on licensees, banks, vendors, and service providers of Bhang trying to capture funds owed to Bhang. Despite publicly

1  reported sales and required minimum monthly royalty amounts, the Bhang licensees which have
2  returned Memoranda of Garnishees have stated that no funds are owed to Bhang.

3  And in an attempt to avoid garnishment, licensees have been told to pay all license and
4  royalty fees either to third parties or to a bank account in the name of Van Rixel; accounts which
5  are currently unreachable by Mentor under the Judgment without filing suit and proving the
6  fraudulent conveyance.

7  A licensee owned by Bhang partner Richard Sellers has used the payments to a middleman
8  as an excuse to avoid collection of any funds under the levy served on it.  And a Bhang lawyer is
9  disparaging Mentor and instructing licensees not to turn over funds as required by a levy.

10 A receiver has the authority to collect debts owed to the company and would be duty bound
11 to ensure that Bhang was receiving all of the funds required by current license agreements, whether
12 such payments were made to a middleman or to Bhang directly.

13 A receiver also has the authority to take actions respecting the property of the company,
14 including ensuring that fair market value is received for any licensed or disposed of assets or that
15 intellectual property is adequately protected.  A receiver could ensure that Bhang's trademark
16 interests are protected.

17 Founding Fathers, an entity owned and managed by Van Rixel, has registered or sought to
18 register trade and service marks that are virtually identical in design to trade and service marks
19 owned by Bhang.  Similarly, CB Brands, another entity owned and managed by Van Rixel, is also
20 seeking to register similar trade and service marks in the cannabis space.

21 Bhang has made no effort to oppose or challenge any of the marks filed by Founding
22 Fathers, despite the marks' design being identical to those used by Bhang and its licensees.  As all
23 of the entities are owned by Van Rixel and Van Rixel is taking every action possible to move assets
24 away from Bhang, it is very unlikely that Bhang received fair market value, if any consideration at
25 all, for the use or license of Bhang's trade and service marks or other intellectual property.

26 Mentor does not have the authority to ensure that Bhang receives proper consideration for
27 such use or to initiate oppositions to such mark registrations but, as the protector of Bhang's assets,
28 a receiver does.  Bhang is wasting.  Considering the interests of Bhang, the appointment of a

- 8 -

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

receiver is a reasonable method to keep Bhang in business and to obtain the fair and orderly satisfaction of the judgment.

Based on the past and current actions of Bhang and its owners, including conveying assets out of the company and instructing its licensee to pay third parties, the appointment of a receiver is a reasonable way to ensure that Bhang is not completely plundered and rendered an empty shell impervious to Mentor's collection efforts, and that Mentor's judgment is paid.

B.  <u>A Receiver May Sell Bhang Assets if Appropriate.</u>

If Bhang succeeds in alienating all of its licensees, the only assets of value to Bhang are its intellectual property including its trade and service marks, its know-how and trade secrets, and its domain name.

While generally, almost all of a judgment debtor's assets are available for satisfaction of a monetary judgment, as the Court noted in *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, "nonmonetary property is not so easily applied. It must be valued and sold. And [California Civil Procedure Code] section 708.205 does not authorize the judgment debtor to value property unilaterally or put it up for public sale." *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1391 (2009); *Office Depot, Inc. v. Zuccarini, supra,* 596 F. 3d at 701-702.

Section 699.040 of the California Civil Procedure Code further limits a writ of execution to "tangible property that can be 'levied upon by taking it into custody'". *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, 174 Cal. App. 4th at 1391. By their very nature domain names, trademarks, know-how, and trade secrets cannot be "taken into custody" under Civil Procedure Code §699.040(a). *Id.*; see also *Pac. Decision Sciences Corp. v. Sup. Ct.*, 121 Cal. App. 4th 1100, 1109 (2004) [no turnover order in aid of writ of attachment for "intangible assets incapable of being taken into physical custody"].

Bhang neither produces nor distributes its branded products; it licenses the marks and intellectual property to licensees which have exclusive distribution rights within a certain state. Bhang's owners are plundering the company and its representatives are telling licensees that funds are to be paid to third-parties. If no cash or other assets are available for satisfaction of the Judgment, the sale of such intellectual property may be the only way to enforce Mentor's Judgment.

1  Appointment of a receiver is necessary to achieve this step.

2  A receiver is necessary to evaluate and value Bhang's trademarks, service marks, trade
3  secrets, know-how, and other intellectual property which make up the bulk of its assets in the event
4  that the receiver decides that selling such assets is the best way to preserve the Bhang estate.

5        C.     <u>Mentor Proposes Kevin Singer Be Appointed Receiver Over Bhang.</u>

6  A good receiver is one who knows the workings of the particular business and industry and
7  will act in the best interests of both the judgment debtor and the judgment creditor. Mentor
8  proposes Kevin Singer of Receivership Specialists, which specializes in both State and Federal
9  Court Receiverships (Real Estate and Businesses), Referee Assignments, Partition Sales, Real
10 Estate & Business Brokeraging, and Real Estate Consulting for Receiverships.

11 Mr. Singer acted as a Superior Court Receiver/Referee in over 290 cases in the last sixteen
12 years, and has also acted as a Federal Court Trustee and Custodian. He is a six time participant and
13 panelist in a California Receivers Forum Training Program in conjunction with Loyola Law School,
14 and he is a licensed California Real Estate Broker, a licensed California General Contractor, founder
15 and former President of a diversified real estate company, and a former Government Affairs Director
16 for a non-profit apartment association with over 36,000 members.

17 Mr. Singer is also currently a member of the Board of Directors for the California Receivers
18 Forum and an Associate Publisher for the Receivership News. He has experience in receiverships in
19 the cannabis industry. Neither he nor his office is associated with, or employed by, any party in this
20 matter.

21 Mr. Singer's billing rate is a reasonable $ 275.00 per hour, and he bills in increments as small
22 as one fifth of one hour (12 minutes). Mr. Singer has agreed to act as receiver to Judgment Debtor
23 Bhang in this matter. A true and correct copy of his *curriculum vitae* is attached as Exhibit A to his
24 Declaration accompanying this Motion.

25            **IV.   CONCLUSION**

26 As this Court has jurisdiction over the parties this court may, and should, order that Mr.
27 Kevin Singer be appointed as receiver for Judgment Debtor Bhang. Bhang has taken no steps
28 toward satisfying the judgment against it, and Mentors efforts have yielded less than $60,000, while

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

1  additional interest of about $90,000 has accrued.

2  Bhang is wasting. It and its principals have (i) fraudulently conveyed assets from the
3  business to its owners or third parties, (ii) tried to avoid Mentor's levies by asking that its licensees
4  direct all payments to a middleman, (iii) set up company bank accounts in names other than Bhang,
5  and (iv) transferred Bhang assets and intellectual property to new entities owned by Bhang's
6  principals.

7  Mentor is unpaid, Bhang deliquescing, and Bhang's principals wastrels. Considering the
8  interests of both Mentor and Bhang, the appointment of a receiver is the most reasonable, likely
9  only, method to obtain the fair and orderly satisfaction of Mentor's judgment and, therefore, this
10 court should grant Mentor's motion to have a receiver appointed.

**Respectfully submitted,**

**Dated: June 30, 2017**                    **THE CORPORATE LAW GROUP**

By:   **/Megan Jeanne/**
      **Megan Jeanne**
      **Attorneys for Plaintiff Mentor Capital, Inc.**

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS – 3:14-cv-03630-LB**

# CERTIFICATE OF SERVICE

I am a citizen of the United States.  My business address is 1342 Rollins Road, Burlingame, CA 94010.  I am employed in the County of San Mateo, from which this service occurred.  I am over the age of 18 years, and am not a party to the above-captioned action.  On the date below I served the following documents:

**JUDGMENT CREDITOR MENTOR CAPITAL, INC.'S MOTION TO APPOINT A RECEIVER OVER JUDGMENT DEBTORS**

On the following person(s) in this action by:

[X]   E-SERVICE by filing the document listed above with the courts ECF service such that all attorneys of record received Notice of Electronic Filing from the court clerk as follows:

Jaime Bianca Herren    jherren@doylelow.com, mlow@doylelow.com

I declare under penalty of perjury under the laws of the United States and State of California that the above is true and correct.  Executed on June 30, 2017 at Burlingame, California.

/s/ Megan Jeanne
Megan Jeanne

**CERTIFICATE OF SERVICE – 3:14-cv-03630-LB**